DECISION
Appellant, Mill Realty Associates (Appellant) challenges a decision of the Coventry Zoning Board of Review (Appellee) denying its application for a building permit. Jurisdiction is pursuant to G.L. 1956 §45-24-69.
 FACTS AND TRAVEL
The Appellant, a Rhode Island general partnership, is the owner of property designated as Lot 41 on Assessor's Plat 42 located in the Town of Coventry, Rhode Island. The property is comprised of five contiguous recorded lots, each measuring 50 feet in width by 100 feet in depth. It was originally part of an old subdivision named "Washington Villa Plat," which was recorded in 1896. The combined lots measure 0.58 acres, or approximately 25,000 square feet in size.
The property is located in an R-20 Residential zone in which single family dwellings are a permitted use. The Coventry Zoning Ordinance (Ordinance) requires a minimum lot size of 20,000 square feet to construct a single family dwelling where there is access to public water and a minimum lot size of 43,560 square feet where there is no access to public water. (Coventry Zoning Ordinance Article 6, Table 6-7) Appellant's property has no access to public water and is less than 43,560 square feet in size.
Appellant's initial effort to develop its property met with resistance due to lack of frontage on any improved road. Section 15-51 of the Coventry Code of Ordinances states that "No building permit for the erection of any building shall be issued unless the building lot abuts a street which has been placed on the official map giving access to the proposed structure." The property abuts Columbus Avenue, which is thickly wooded with hilly terrain. Columbus Avenue is categorized as a paper street. Although the street appears on the recorded plat map and official Town map, it was never developed or accepted as a public street. Applicant sought and was refused an exception from the road construction standards set forth in the town ordinance. The issue was ultimately resolved in an earlier case, Mill Realty Associates v. Zoning Board ofReview, 721 A.2d 887, 890 (R.I. 1998). In accordance with that decision, the applicant was permitted to proceed with its project by constructing a gravel driveway; the minimum established standard grade road permitted under the ordinance.
Having prevailed in the Supreme Court, Appellant renewed its efforts to develop its property. The Appellant sought to install an individual sewage disposal system (ISDS) and a private well, rather than connect to the existing public water line 1600 feet away. (Tr. at 2). The Appellant had already received approval for its plans for the private well and ISDS from the Rhode Island Department of Environmental Management (DEM). (Tr. at 3). In Rhode Island, DEM, rather than a municipality, possesses the authority to approve installation of a private well and ISDS. G.L. 1956 § 42-17.1-2(m).
The Zoning Official rejected Appellant's request for a building permit because Appellant had not obtained a dimensional variance. The lot did not meet the dimensional requirements to construct a dwelling without access to public water. (Tr. at 1). On October 24, 2000, Applicant appealed that decision to the Zoning Board of Review.
On February 6, 2001, the Board affirmed the Zoning Official's decision. The Board reasoned that in accordance with Article 6, Table 6-6 of the Ordinance, the Appellant had less than the required area for the erection of a single family dwelling without public water and using an ISDS and private well. (Decision at 1). The Board found that the Town would issue a building permit if public water was brought to the subject property. (Decision at 2). It is from this decision that Appellant takes its timely appeal.
On appeal, Appellant argues that the Board's determination was affected by error of law. Appellant further maintains that the Board's action was both arbitrary and capricious and in excess of its authority, warranting reversal of the Board's decision.
 STANDARD OF REVIEW
The standard of review for this Court's appellate consideration of the decision is outlined in G.L. 1956 § 45-24-69(D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd.of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979));Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v.Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981).
 ANALYSIS Nonconforming Lot of Record
The Appellant first argues that the Board's decision constitutes an error of law because the property was recorded ninety years before the enactment of the town's zoning ordinance; it thus constitutes a nonconforming lot of record. Appellant contends that it is not bound by the lot size requirement of the Ordinance. The Appellant cites to the language of Article 8, § 871 of the Ordinance for its authority.
The Rhode Island Zoning Enabling legislation specifically protects nonconforming uses. General Laws § 45-24-39(a) provides:
 "Any city or town adopting or amending a zoning ordinance under this chapter shall make provision for any use, activity, building, or sign or other improvement, lawfully existing at the time of the adoption or amendment of the zoning ordinance, but which is nonconforming by use or nonconforming by dimension. The zoning ordinance may regulate development which is nonconforming by dimension differently than that which is nonconforming by use."
G.L. 1956 § 45-24-39(a). Article 8 § 871 of the Ordinance provides that:
 "A lot or parcel of land having a lot width or area which is less than required by Article 6 may be considered buildable for a single residential purposes regardless of the lot width or area, provided such lot or parcel of land was duly recorded prior to the effective date of this Ordinance, and further provided that at the time of the recording said lot or parcel of land so created conformed in all aspects to the minimum requirements of the Zoning Ordinance in effect at the time of such recording . . . ." (Emphasis Added.)
Appellant's reliance on this section is misplaced. The Ordinance does not automatically "grandfather" Appellant's property. The Ordinance gives the Board the discretion whether or not to consider an undersized lot buildable as a single family dwelling. The term "may," gives the Board broad discretion. Article 2 § 201(C) of the Ordinance defines the word "may" as "permissive," rather than "mandatory," which is often denoted by the word "shall." Limoges v. Eats Restaurant, 633 A.2d 1359
(R.I. 1993) (The Rhode Island Supreme Court has held that in "cases of statutory construction, the word `shall' usually connotes the imperative."); Carlson v. McLyman, 77 R.I. 177, 74 A.2d 853, 855 (R.I. 1950) (The ordinary meaning of the word "may" is permissive and not compulsive.) The express language of the section clearly indicates that the Board possesses the discretion to grant or deny relief in such matter.
The Appellant's property is not a nonconforming lot of record. Rhode Island General Laws defines a nonconforming parcel of land as one "lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that provision or amendment." G.L. 1956 § 45-24-31(49). There are two types of nonconformance. A nonconformance by use is defined as "a lawfully established use of land . . . which is not a permitted use in that zoning district." G.L. 1956 § 45-24-31(49)(i). Nonconformance by dimension is defined as a ". . . parcel of land not in compliance with the dimensional regulations of the zoning ordinance." G.L. 1956 §45-24-31(49)(ii). Article 2 § 210(92)(a) and (b) of the Ordinance contains identical definitions. Although Appellant correctly asserts that the property lawfully existed at the time Coventry adopted the Ordinance in 1994, it incorrectly states that it is not in conformity with the provisions of the Ordinance. Constructing a single family dwelling on Appellant's property would not constitute nonconformance by use or dimension unless Appellant built the home without public water access. The lot is located in a R-20 zone, which requires only 20,000 square feet for a single family dwelling unit to be constructed. Therefore Appellant's property is a permitted use and not a nonconforming lot of record. Because of Appellant's lot size, it must obtain access to public water or obtain a dimensional variance to construct a private well on an undersized lot.
Appellant cannot develop its property as a single family dwelling with private water access without first obtaining a dimensional variance.Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001) (The hardship suffered by the property owner if a dimensional variance is not granted must amount to such that no reasonable alternative for a legally permitted beneficial use could be enjoyed of the property, and not just a mere inconvenience.)See also Bernuth v. Zoning Bd. of Review of the Town of New Shoreham,770 A.2d 396 (R.I. 2001). The Zoning Official could not issue a building permit to allow the Appellant to construct a dwelling that violates the Ordinance. Appellant's remedy was not to seek a building permit, but to first apply for a dimensional variance. Appellant has not sought a dimensional variance.
 Selective Enforcement
The Appellant next argues that the Board is practicing selective enforcement because it has allowed many other neighboring property owners with similar lot sizes to Appellant's or even smaller, to install private wells rather than connect to nearby available public water. Appellant asserts that the Board's action represents ". . .arbitrary and capricious selective enforcement of a zoning ordinance. . ." (Appellant's Memorandum at 10). Selective enforcement is more commonly argued in cases involving alleged violations of due process and equal protection rights and does not apply to the instant case. State v. Bjerke, 687 A.2d 1069 (R.I. 1997); Santini v. Lyons, 448 A.2d 124 (R.I. 1982); Picerne v. DiPrete,428 A.2d 1074 (R.I. 1981), State v. DeMasi, 420 A.2d 1369 (R.I. 1980).
The Rhode Island Zoning Enabling Act of 1991 grants to zoning boards of review throughout the State broad authority in the regulation of land use. G.L. 1956 §§ 45-24-27 through 45-24-72. A municipal zoning ordinance is enacted pursuant to the State's police powers for the purposes of "promoting the public health, safety, and general welfare." G.L. 1956 § 45-24-30(1). "Zoning, land development and subdivision regulations constitute a valid exercise of police power, and are matters of statewide concern." Munroe v. Town of E. Greenwich, 733 A.2d 703
(R.I. 1999). Here, Appellee was clearly exercising its statutory power when it upheld the Zoning Official's decision.
Every piece of land is unique, and the Appellant cannot rely on relief granted to its neighbors as a basis for the Board to grant its petition. It is recognized that:
 "[t]he particular use of one parcel, by virtue of its location, may have a greater impact on surrounding properties than that of another parcel in the same zoning district; two parcels may have been classified at different times when the needs of the municipality differed; and the different pieces of property may have physical characteristics which differ enough to require some minor differences in use restrictions, while still permitting the land to be placed in the same general category." Roland F. Chase, Rhode Island Zoning Handbook 2 (1993) (citing Sweetman v. Town of Cumberland, 117 R.I. 134, 364 A.2d 1277 (R.I. 1976)).
Pursuant to G.L. 1956 § 45-24-41(d)(1), the Zoning Board of Review reviews each zoning application individually. In an application for a variance, the Board cannot consider other "nonconforming uses of neighboring land or structures in the same district [or] permitted use of lands and structures in an adjacent district" in rendering its decision. G.L. 1956 § 45-24-41(d)(1). Appellant suggests that neighboring property owners obtained similar relief. Accordingly, the Court rejects Appellant's argument that the Board's decision should be reversed on the grounds of selective enforcement.
 Agency Regulation
Finally, Appellant argues that DEM possesses the sole authority to review the plans for installation of the ISDS and private well. Appellant contends that the Board cannot conduct an independent review of the plans. Appellant received approval for its plans for an ISDS and private well from DEM on January 16, 1997. (Appellant's Memorandum, Exhibit D). Appellant argues that any health or safety concerns regarding the use of an ISDS and private well have already been addressed by DEM and should not be considered by the Board. The Board did not rely on DEM's findings; rather the Board required the Appellant to connect to the available public water to meet the requirements of the ordinance. (See
Article 6, Table 6-7.)
Rhode Island General Laws § 42-17.1-2(m) vests power in the Director of DEM "[t]o enforce, by such means as provided by law, the standards for the quality of air, and water, and the design, construction and operation of all sewage disposal systems . . . ." G.L. 1956 §42-17.1-2(m). See also Strafach v. Durfee, 635 A.2d 277 (R.I. 1993). Also,
Rhode Island General Laws § 23-27.3-11361 states that no individual "shall install, construct, alter, or repair . . . [an ISDS] until he or she has obtained the written approval of the director of the department of environmental management of the plans and specifications for the work." G.L. 1956 § 23-27.3-11361. Whereas receiving DEM approval is a prerequisite to obtaining a building permit, the receipt of DEM approval does not guarantee the issuance of the building permit. Article 7, § 7162 of the Ordinance provides that the "design, installation and operation of all subsurface wastewater disposal system [must receive approval from DEM] prior to receiving a building permit." (Emphasis added.) Although DEM may have the sole authority to approve an ISDS and private well, it is the Board who has the exclusive power to grant a building permit. See Town of Warren v. Whitehouse, 740 A.2d 1255 (R.I. 1999) (Even though the Coastal Resources Management Council has exclusive jurisdiction over wharves in tidal waters, it does not restrict or limit the traditional zoning power of municipalities. A municipality still retains its zoning power to regulate the construction of buildings, landscaping, lighting, and any other use of the land above the mean high-water mark.); Gara Realty v. Zoning Bd. Of Review of the Town ofSouth Kingston, 523 A.2d 855 (R.I. 1987) (Although DEM has authority to set forth minimum requirements for the construction of an ISDS, municipalities still have the option to provide additional restrictions concerning such construction.).
Along with DEM, the Board possesses a strong interest in the management of waste water within its district. "Rhode Island cities and towns may enact ordinances relating to individual sewage-disposal system (ISDS) inspection and maintenance" pursuant to Rhode Island General Laws §45-24.5-3, Kuzniar v. Keach, 709 A.2d 1050 (R.I. 1998). The ordinances are designed to "eliminate and prevent the contamination of state waters, caused by malfunctioning [ISDS], through the implementation of ISDS inspection and maintenance programs." G.L. 1956 § 45-24.5-3. Although DEM issues ISDS and private well certifications and permits, Section 45-24.5-3 allows the Board to consider the future impact of the ISDS system in its community. In this case, the Board based its decision on the express language of the Ordinance, Article 6, Table 6-7, with respect to availability of public water and not on the validity of DEM's decision.
 CONCLUSION
After review of the entire record, the Court finds that the decision of the Zoning Board of Review was not affected by error of law, was not in violation of statutory and ordinance provisions, was not arbitrary and capricious, and was supported by the reliable, probative, and substantial evidence of record. Substantial rights of the Appellant have not been prejudiced. Accordingly, this Court affirms the decision of the Coventry Zoning Board of Review, denying the request for a building permit.
Counsel shall submit the appropriate judgment for entry by the Court after notice.