DECISION
Before this Court is the appeal of C C Distributors, Inc., Copley Distributors, Inc., Charles Fradin, Inc., and Rhode Island Distributing Company ("appellants") from a decision of the Department of Business Regulation (DBR), granting a stock transfer between appellee Global Horizon, Inc. (Global) and appellee M.S. Walker, Inc. (Walker). The appellants argue that the Department of Business Regulation Hearing Officer committed error of law in approving the stock transfer. Jurisdiction is pursuant to R.I.G.L. 1956 § 42-35-15.
 Facts/Travel 
Global is a Rhode Island corporation, which holds a Class B wholesaler's license in Rhode Island. Walker is a Massachusetts corporation, which holds a wholesaler's license in Massachusetts. On August 9, 2001, Global and Walker made a joint application to the Liquor Control Section of the Rhode Island Department of Business Regulation to transfer the majority shares of stock from Global to Walker, pursuant to R.I.G.L. 1956 § 3-5-10(b)(3).
The appellants opposed the stock transfer. Before the DBR, the appellants argued that Walker's rectifying activity under its wholesaler's license in Massachusetts constitutes manufacturing activity under R.I.G.L. 1956 § 3-6-2. Accordingly, the appellants contend that allowing the stock transfer, which would license Walker as a wholesaler in Rhode Island, would violate R.I.G.L. 1956 § 3-6-15, providing:
 "[n]o manufacturer of distilled spirits or wines whose principal place of manufacture is outside of this state shall hold a wholesaler's license issued under this title or shall have any interest in a wholesaler's license, either directly or indirectly."
After an administrative hearing held on October 30, 2001, the Hearing Officer granted the transfer. The Hearing Officer concluded that Section3-6-2 classifies manufacturing and rectifying as separate activities but grants the DBR discretion to treat the two activities as the same if the context requires. Interpreting Section 3-6-2, the Hearing Officer concluded that the presumption is that normally rectifying and manufacturing are not the same activities. The Hearing Officer reached this conclusion by reviewing the origins of the statutes pertaining to rectifying and manufacturing of alcoholic beverages. The Hearing Officer found that under the 1938 recodification of the public laws, rectifying and manufacturing were contained under different sections of the public laws. This separation of rectifying and manufacturing in the General Laws, the Hearing Officer noted, exists in the present statutory scheme regulating alcoholic beverages. Accordingly, based on his review of the legislative history of the relevant statutes and his interpretation of § 3-6-2 in its current form, the Hearing Officer found that rectifying and manufacturing are separate activities and that the application for the stock transfer did not violate R.I.G.L. 1956 §3-5-16. Thus, the Hearing Officer approved the stock transfer from Global to Walker. The appellants have timely appealed this decision of the DBR to this Court.
On appeal, the appellants argue that the Hearing Officer committed error of law by approving the stock transfer between Global and Walker because the transfer violates the provisions of R.I.G.L. 1956 § 3-6-15
by allowing Walker, a manufacturer of distilled spirits from outside the state, to hold an interest in a wholesaler's license within Rhode Island. Walker is a licensed wholesaler in Massachusetts that also engages in rectifying. The appellants argue that under R.I.G.L. 1956 § 3-6-2 the General Assembly has classified rectifying activity to be equivalent to manufacturing. Accordingly, since a rectifier is a manufacturer according to the appellants' construction of the statute, the stock transfer would violate Section 3-6-15 by allowing Walker, a manufacturer, to hold an interest in a wholesaler's license.
The appellees assert that the Hearing Officer properly interpreted Section 3-6-2 because the legislature intended rectifying to be a separate function from manufacturing. Thus, the appellees contend that because rectifying is distinct from manufacturing, the stock transfer does not violate Section 3-6-15.
 Standard of Review 
The scope of the Superior Court's review of administrative decisions is confined by R.I.G.L. 1956 § 42-35-15(g) which provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other errors or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, a reviewing court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or weight of the evidence concerning questions of fact. Costav. Registry of Motor Vehicles, 543 A.2d 1307 (R.I. 1988). Even where a reviewing court is inclined to view the evidence differently than the agency, it must uphold the agency decision if there is any legally competent evidence in the record supporting the agency's decision. BlueCross Blue Shield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987).
Questions of law are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict of Interest Comm'n., 509 A.2d 453, 458 (R.I. 1986). Although involving questions of law, the construction and interpretation of a statute and applicable regulations by the agency charged with their administration are entitled to great weight by the courts. Griggs v. Duke Power Co., 401 U.S. 424, 433-34, 91 S.Ct. 849, 854-56, 28 L.Ed.2d 158 (1971).
 Statutory Construction 
At issue is purely a question of law. Did the General Assembly intend to equate rectifying and manufacturing in enacting Section 3-6-2?
R.I.G.L. 1956 § 3-6-2 states:
 "rules and regulations established and authorized by the department pertaining to rectifiers and those regarded as being in the business of rectifying, the business of manufacturing beverages may be deemed to include the business of rectifying beverages unless the context otherwise requires."
The appellants argue that the Hearing Officer committed error of law by construing "may" as granting the Hearing Officer discretion to determine whether rectifying constitutes manufacturing activity. According to the appellants' interpretation of the statute, the General Assembly intend the verb "may" to impose a mandatory requirement on the Hearing Officer to find that rectifying is manufacturing unless the Hearing Officer makes a determination that the context requires otherwise.
In construing statutes, this Court is guided by the principle that statutes are to be construed according to their plain meaning unless such interpretation would defeat the intent of the legislature. Gilbane Co.v. William Poulas, 576 A.2d 1195, 1196 (R.I. 1990). When a statute is unclear or ambiguous, the Court examines the statute in its entirety to glean the intent and purpose of the legislature keeping in mind the nature, object, language and arrangement of the provisions to be construed. American Power Conversion v. Benny's Inc., 740 A.2d 1265
(R.I. 1999).
Here, the plain meaning of "may" is not dispositive because as the Rhode Island Supreme Court has acknowledged "may" is subject to both a permissive and mandatory interpretation. The Court has stated:
 "that the ordinary meaning of the word `may' is permissive and not compulsive; yet whether it should be given the latter meaning and construed as `shall' in a given case depends on the intent of the legislature as ascertained from the language, the nature, and the object of the statute."
Carlson v. McLyman, 77 R.I. 177, 182, 74 A.2d 853, 855 (1948).
To determine the intent of the legislature when a statute is ambiguous, the Court must apply the rules of statutory construction.LaPlante v. Honda North America, 697 A.2d 625 (R.I. 1997). The Rhode Island Supreme Court has repeatedly stated that it will assume that the legislature intended that statutes relating to the same subject matter be construed together to be consistent and to effectuate the policy of the law. State v. Diccio, 707 A.2d 1251 (R.I. 1998); Rhode Island StatePolice Lodge No. 25 et al. v. State, 485 A.2d 1245 (R.I. 1984).
Reviewing other statutes pertaining to rectifying and manufacturing evinces a legislative intent in using the verb "may." Throughout Chapter Six of the Rhode Island General Laws, pertaining to Alcoholic Beverages, the General Assembly separates the functions of manufacturing and rectifying. Rhode Island General Laws 1956 § 3-6-1 establishes the operations authorized with a manufacturing license and sets forth the annual fee for holders of this license. In a separate statute, R.I.G.L 1956 § 3-6-3, the legislature establishes the rectifier's license and the fee required for holding such license.
Again, manufacturing and rectifying are treated separately in Sections3-6-1 and 3-6-4. While Section 3-6-1 establishes the practices authorized by a manufacturer's license, Section 3-6-4 delineates the practices mandating a rectifier's license. Accordingly, by enacting separate statutes pertaining to rectifying and manufacturing, it is apparent that the legislature intended to classify rectifying as separate from manufacturing. Mottola v. Cirello, 789 A.2d 421, 423 (R.I. 2002) (stating that the Court's goal is to give effect to the purpose of the act as intended by the legislature).
Furthermore, if rectifying were the same as manufacturing, as the appellants maintain, then Section 3-6-4 would conflict with Sections 3-6-15
and 3-7-22. Section 3-6-15 precludes a manufacturer whose principal place of business is outside Rhode Island from holding a wholesaler's license or having any direct or indirect interest in a wholesaler's license. Section 3-7-22 prohibits a holder of a manufacturer's license or wholesaler's license to have a direct or indirect interest in a retailer's license. Significantly, Section 3-6-4 allows retailers and wholesalers to hold a rectifier's license. This section states:
 "Any person who rectifies, purifies, refines or blends distilled spirits or wines by any process, other than by original and continuous distillation from mash, wort, or wash, through continuous closed vessels and pipes until the manufacture is complete, and every wholesale or retail licensee who has in his or her possession any still or leach tub, or who keeps any other apparatus for the purpose of refining in any manner distilled spirits and wines, and any person who without rectifying, purifying or refining distilled spirits mixes such spirits, wines or other liquor with any material, manufactures any spurious, imitation or compound liquors for sale under the name of whiskey, brandy, gin, rum, wine, spirits, cordials or wine bitters, or any other name, is regarded as a rectifier engaged in the business of rectifying." (Emphasis added.)
Consequently, because Section 3-6-4 allows wholesalers and retails to engage in the business of rectifying, rectifying must be interpreted as being a separate function from manufacturing in order to avoid inconsistencies between statutory sections. Local 400, InternationalFederation of Technical Professional Engineers v. Rhode Island StateLabor Relations Board, 747 A.2d 1001, 1004 (R.I. 2000) (noting that in construing statutes the Court will attempt to harmonize different statutory provisions).
Here, the Hearing Officer's interpretation of the statute as granting the DBR discretion to determine whether the context requires rectifying to be treated as manufacturing is consistent with the text of the statute and the intent of the legislature. Though the appellants' interpretation of the statute is reasonable, the Court will afford the construction and interpretation of a statute by the agency charged with its administration great weight. In re Advisory Opinion To The Governor, 723 A.2d 55 (R.I. 1999). Accordingly, the Court finds that the legislature intended rectifying to be distinct from manufacturing. Therefore, the decision of the Hearing Officer granting the stock transfer did not violate R.I.G.L. 1956 § 3-6-18.
 Conclusion 
Since this Court finds that the Hearing Officer did not commit error of law in interpreting Section 3-6-18, this Court affirms the decision of the Hearing Officer. The substantial rights of the appellants have not been prejudiced. Accordingly, the decision of the Hearing Officer is affirmed.
Counsel shall submit the appropriate judgment for entry after notice.